**BRYAN CAVE LEIGHTON PAISNER LLP**
(Ashley) Hyun-Jeong Kim (Cal Bar No. 350856)
120 Broadway, Suite 300
Santa Monica, CA  90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200
E-Mail:  ashley.kim@bclplaw.com

Charles E. Tompkins (*pro hac vice*)
Darren E. Ray (*pro hac vice*)
1155 F Street NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Fax: (202) 508-6200
E-Mail:  charles.tompkins@bclplaw.com
              darren.ray@bclplaw.com
*Counsel for Plaintiffs FLEXTRONICS AP, LLC
And FLEXTRONICS INTERNATIONAL USA, INC.*

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| FLEXTRONICS AP, LLC, a Colorado limited liability company, and<br><br>FLEXTRONICS INTERNATIONAL USA, INC., a California corporation,<br><br>       Plaintiffs,<br><br>   v.<br><br>CHRISTOPHER RICCI, an individual,<br><br>       Defendant. | Case No. 5:26-cv-00117-PCP<br><br>Hon. P. Casey Pitts<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: July 9, 2026<br>Time: 10:00 AM<br>Judge: Hon. P. Casey Pitts<br>Action Filed: January 6, 2026 |

1

#### 1.    <u>JURISDICTION & SERVICE</u>

(a) This Court has subject matter jurisdiction under diversity jurisdiction because none of the Plaintiffs live in the same state as the Defendant and the amount of damages is more than $75,000.

(b) Service has been completed through personal service of Defendant Christopher Ricci ("Ricci") on January 15, 2026, as evidenced by the Proof of Service filed at ECF No. 11. Defendant does not dispute that the Court has personal jurisdiction or that this is the correct venue.

#### 2.    <u>FACTS</u>

<u>Plaintiffs' Version:</u>

This action arises from Ricci and his company AutoConnect Holdings LLC's ("AutoConnect's") fraud in connection with the terms of a Secured Convertible Promissory Note (the "Note") executed on May 20, 2015, and amended four times between May 2015 and June 2017. The terms of both the Note and the First Addendum to the Note were the brainchild of Ricci. In 2015 when the Note and Addendum were conceived, Ricci was the senior-most attorney for Flex Ltd. (together with its affiliates, including Flextronics AP, LLC ("Flex AP") and Flextronics International USA, Inc. ("Flex USA"), "Flex") focused on intellectual property law and was entrusted with final decision-making authority in this area for Flex.

Ricci, while at Flex, orchestrated the transfer of a Flex AP patent portfolio (the "Patents")—which Ricci had "invented" at Flex's expense while Ricci was supposed to be working full time as Flex's lead IP attorney—to AutoConnect, a company Ricci co-founded in 2015 during negotiations over the Note's terms to hold the Patents. Ricci concealed his involvement with AutoConnect from Plaintiffs which, if known by Plaintiffs, would have triggered additional scrutiny of the transaction. Ricci—unbeknownst to Plaintiffs—also acted as counsel for the AutoConnect side of the transaction. Based on the communications between Ricci and his co-founders Peter Suorsa and Gregg Hershenson, it can be fairly inferred that by the time AutoConnect was formed, Ricci had already reached a deal with Suorsa and Hershenson that Ricci would become a one-third owner of AutoConnect shortly after leaving Flex. This prior agreement, which was not communicated to

2

<div style="writing-mode: vertical-rl">BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386</div>

Flex AP, is the reason Ricci arranged for, promoted to Flex AP, and implemented the sale of the Patents to AutoConnect. This omission, as well as the other misrepresentations and omissions by Ricci noted in Plaintiffs' First Amended Complaint, induced Flex AP to enter into the Note and related agreements with AutoConnect.

Given Ricci's conflicts of interest, the terms of the Note and the First Addendum—which Ricci devised—were highly favorable to AutoConnect, for at least two reasons: (a) the AutoConnect transaction fails to include a grant back license to Flex AP (a standard provision); and (b) the First Addendum provides that Flex AP must reimburse AutoConnect for certain ongoing and ever-increasing patent maintenance costs and fees in the event Flex AP exercises its security interest in the Patents.

Under the Note, Flex AP's "sole remedy" in the event AutoConnect failed to satisfy the Note within 10 days of a Flex AP demand for payment on or after the maturity date of the Note was to exercise Flex AP's security interest to recover the Patents. Between late 2016 and the fall of 2017, Ricci and his partners pressed for a series of extensions to the maturity date. As Ricci foresaw when devising the First Addendum, over time, Flex AP's ever-increasing reimbursement obligations vastly exceeded the value of the Note. Once that happened, Flex could only recover its investment if AutoConnect developed into an automotive technology company. Thus, by 2017, when AutoConnect could not satisfy the payment obligation, Flex AP declined to demand payment and trigger an event of default pursuant to the Note (and Flex AP's reimbursement obligations) 10 days later. Rather than demand payment, Flex AP elected to retain its remaining rights pursuant to the agreement, including its potential right to Preferred Shares in AutoConnect in the event of a change of control or initial public offering.

Nearly seven years later, in 2024, AutoConnect sued Ford, GM, and Toyota, who are current, former, or potential Flex Ltd. and Flex AP customers, for infringement of the Patents. This litigation placed Flex Ltd. and Flex AP at immediate risk of potential financial and/or reputational harm. On June 25, 2025, Flex AP sent AutoConnect a written Notice of Default, demanding that AutoConnect satisfy its obligations under the Note. AutoConnect failed to pay or transfer the

JOINT CASE MANAGEMENT STATEMENT

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Patents within 10 days, defaulting by July 5, 2025.  On July 10, 2025, AutoConnect notified Flex AP that AutoConnect considered Flex AP's demand untimely, and that AutoConnect refused to either pay the amounts owed pursuant to the Note or return the Patents to Flex AP.  AutoConnect's non-payment following Flex AP's demand in 2025 triggered an Event of Default pursuant to the Note.

As a related matter, upon Ricci's departure from Flex, Ricci improperly retained over 1,700 documents containing Plaintiffs' confidential information.  At the time of Ricci's departure from Flex, Ricci knew or should have known that the retention of the confidential information was unlawful.  A large portion of the retained documents were source code from the prototypes and demo units used as part of the development of the Patents.  The documents also contain product readiness and product description memorandums, strategy documents, internal slide decks, pitch materials, cost and revenue models, agreements, client communications, and customer product specification slide decks.

Defendant's Version:

By 2015, the Flex conglomerate decided to longer pay the substantial costs to maintain and develop a patent portfolio non-core to its business, and Ricci's mandate was to offload the Patents while preserving whatever upside Flex could retain. Flex first attempted to spin out the technology through a newly formed subsidiary, Topi Systems, and planned to have Ricci and longtime Flex consultant, Suorsa, serve as Topi officers.

After Topi was unable to attract outside investments, Flex agreed to let AutoConnect purchase the portfolio and shoulder the cost of maintaining and enhancing it, in exchange for a $500,000 convertible note secured by the portfolio and an option to convert the indebtedness into a nearly 20-percent stake in AutoConnect if it succeeded in attracting other investors.

At the time, Ricci had no ownership interest in AutoConnect, no financial interest, no consulting arrangement, and no "handshake deal" to join it, and Ricci did not negotiate, draft, or decide the terms of the AutoConnect transaction on behalf of Flex. Instead, another Flex in-house attorney, Rob Cronan ("Cronan"), handled months of negotiations with AutoConnect and drafted

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

4

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

the entire suite of deal documents. Another Flex attorney, Tim Stewart ("Stewart"), executed the deal documents, made effective May 20, 2015.

As the process of transitioning responsibility for the patent files from Flex to AutoConnect unfolded, AutoConnect began to appreciate that the estimated costs to maintain and prosecute the patent portfolio were substantially higher than expected. AutoConnect proposed an addendum requiring Flex to reimburse AutoConnect's reasonable patent costs if Flex elected to reclaim the portfolio after a default on the note; without such protection, AutoConnect faced the prospect of pouring substantial sums into improving the patents only to have Flex retake them for free. Before AutoConnect proposed the addendum, Ricci was asked whether Flex might consider it, and because Ricci believed it to be a reasonable request, Ricci raised it with another Flex in-house attorney, Ben Tabler ("Tabler"). Tabler drafted the addendum, Cronan reviewed the addendum, and Stewart signed the addendum.

Ricci left Flex in September 2015 and joined his new employer, NextEV (an electric vehicles company) before the addendum was executed. Ricci did not become a partial owner of, or make a loan to, AutoConnect until 2016, the former of which was ascertainable from a publicly available filing with the Delaware Secretary of State. By March 2017, because AutoConnect needed more time to close investment transactions with potential investors, Flex's in-house legal department, including John Ritsick ("Ritsick"), knew Ricci was interacting with Flex about extensions of AutoConnect's maturity date of the note. When the Note matured later in 2017, AutoConnect did not pay, and Flex elected not to demand payment, not to declare default, not to foreclose, and not to reclaim the Patents. And multiple Flex attorneys knew that Ricci was involved in the post-maturity negotiations on AutoConnect's behalf, including Ritsick and Cronan. Rather than claim wrongdoing by Ricci or even declare a default of the unpaid Note, Flex communicated that it did not want the Patents back and intended to walk away rather than assume the costs of ownership.

Having made that choice, Flex did nothing with respect to AutoConnect or the Patents for nearly eight years—while AutoConnect continued to invest hundreds of thousands of dollars

JOINT CASE MANAGEMENT STATEMENT

maintaining and expanding the patents that Flex had abandoned. Flex's slumber abruptly ceased only after AutoConnect filed patent infringement actions against GM, Toyota, and Ford in late 2024, when those longtime Flex customers complained to Flex and agreed to fund Flex's legal campaign against AutoConnect and Ricci. To pacify those customers, Flex attempted to declare a default of a Note that was unpaid in 2017, and when that did not work, concocted its revisionist recasting of a transaction it wanted into an elaborate alleged fraud by Ricci, all while relying on facts it had access to years before.

### 3. LEGAL ISSUES

Plaintiffs Flex AP and Flex USA bring claims against Defendant Ricci for breach of fiduciary duty; fraud; fraudulent inducement; and misappropriation of trade secrets in violation of California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 *et seq.*).

The legal issues include: (a) what fiduciary duties arguably could apply to Ricci, depending on which Flex entity or entities employed him; (b) whether Flex USA has any standing to assert any of its claims against Ricci; (c) whether any of Flex's claims survive the applicable statutes of limitations or are barred by them or by laches; and (d) whether Flex owned any protectable trade secrets.

### 4. MOTIONS

Ricci's motion to dismiss Flex's Amended Complaint, filed under Federal Rule of Civil Procedure 12(b)(6), has been fully briefed and heard by the Court, and remains pending for the Court's resolution. If granted, the motion would dispose of the entirety of Flex's case.

### 5. AMENDMENT OF PLEADINGS

Plaintiffs filed an Amended Complaint on March 20, 2026.

### 6. EVIDENCE PRESERVATION

Plaintiffs Flex AP, Flex USA, and Ricci have reviewed the Guidelines for the Discovery of Electronically Stored Information. The parties have conferred about the preservation of evidence reasonably relevant to the claims and defenses in this action, and Ricci raised the likelihood that, given the long passage of time, Flex has not preserved all relevant evidence from 2014 to 2017

from custodians no longer employed by Flex and even custodians who remain employed by Flex, other than what may have been coincidentally preserved in connection with legal holds Flex may have had in place during that time for other matters or disputes.

### 7. DISCLOSURES

The parties will exchange initial disclosures by July 2, 2026.

### 8. DISCOVERY

The parties have already completed a substantial portion of document discovery in connection with the related cases identified in response to Item No. 10 below, and have conferred about the possibility of stipulating that document productions made in those related cases be deemed made in this action. Similarly, the parties have already completed a number of depositions in those related cases, and have conferred about the possibility of stipulating that those depositions given in those related cases be deemed given in this action. The parties have agreed to continue conferring about both possibilities. Plaintiffs anticipate seeking depositions of Ricci and/or his co-founders Peter Suorsa and Gregg Hershenson. Ricci anticipates seeking depositions of the corporate representations of Flex AP and Flex USA, as well as Ben Tabler (an in-house attorney of Flex who worked on the AutoConnect deal) and Jon Hoak (Flex's general counsel). The parties will work toward entry of a proposed protective order and an electronically stored information order.

### 9. CLASS ACTIONS

Not applicable.

### 10. RELATED CASES

The parties are aware of two related proceedings:

1.  *AutoConnect Holdings LLC v. Toyota Motor Corporation et al.*, No. 2:24-cv-00802-JRG-RSP (E.D. Tex.).

2.  A confidential arbitration proceeding ("Arbitration").

### 11. RELIEF

Plaintiffs seek judgment against Defendant Ricci on their claims as follows:

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

JOINT CASE MANAGEMENT STATEMENT

1. General, special, and other compensatory damages suffered by Plaintiffs in an amount in excess of $1,000,000, according to proof at trial;

  a. Bases:

    i. Total outstanding principal and interest of the Note as of June 29, 2026, would be $855,169.68. This number will continue to increase as the case moves forward.

    ii. Due to Ricci's Fraud, Flex has had to incur attorneys' fees and costs exceeding $949,134.25.

2. Exemplary, statutory, and/or enhanced damages;

3. Punitive damages;

4. Disgorgement of all profits, equity, or benefits Ricci derived from AutoConnect;

5. Damages resulting from Ricci's misappropriation of Plaintiffs' confidential trade secrets;

  a. Bases:

    i. Ricci's profits and expected future profits from his interest in AutoConnect.

    ii. Flex's attorneys' fees and costs.

  b. Basis: At least in the amount of Flex's attorneys' fees and costs incurred as a result of Ricci's conduct.

6. An order requiring Ricci to cause the Patents to be returned to Flex AP;

7. Reasonable attorneys' fees, costs, and expenses;

8. Pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

9. Such other and further relief as the Court deems just and proper.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

8

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

### 12.    SETTLEMENT AND ADR

The parties have not yet attempted settlement. The parties have discussed available alternative dispute resolution options, but they have not reached an agreement to use any such procedures at this time.

### 13.    OTHER REFERENCES

Not applicable.

### 14.    NARROWING OF ISSUES

The parties discussed the possibility of stipulating to certain facts to narrow the issues. Ricci contends the Court's resolution of the following issues at an early juncture would streamline discovery and the overall case: the limitations and laches issues; the issue of whether Flex owned any protectable trade secrets; and the issue of which Flex entity employed Ricci and which fiduciary duties (and which jurisdiction's fiduciary-duty laws) may be applicable.

### 15.    SCHEDULING

The parties propose the following case schedule:

| Event | Date |
| --- | --- |
| Fact Discovery Cutoff | TBD |
| Deadline to Exchange Opening Expert Reports | TBD |
| Deadline to Exchange Reply Expert Reports | TBD |
| Expert Discovery Cutoff | TBD |
| Last Day for Filing Discovery-Related Motions | TBD |
| Last Day for Filing Dispositive Motions and *Daubert* Motions | TBD |
| Parties to Meet and Confer on Pretrial Filings | TBD |
| Deadlines to File Motions in Limine | TBD |

JOINT CASE MANAGEMENT STATEMENT

| Deadline to File Oppositions to Motions in Limine | TBD |
| --- | --- |
| Deadline to Exchange and Submit Pretrial Filings | TBD |
| Trial-Setting Conference | TBD |

## 16.    TRIAL

Flex AP and Flex USA have demanded a jury trial, but some issues may not be triable by juries, such as their requests for permanent injunctive relief. Flex AP and Flex USA estimate the trial to last five days if tried to a jury; Ricci estimates the trial to last longer if tried to a jury but shorter if tried to the Court.

## 17. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

1.    Flex Ltd.

2.    Flex International Holding LLC

3.    Flextronics Corporation

4.    Flex Holdings Luxembourg S.à r.l

5.    Flextronics Technologies Luxembourg S.à r.l (FKA Vista Pointe Technologies (Lux) S.à r.l)

## 18.    PROFESSIONAL CONDUCT

The parties' counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Dated: July 2, 2026.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Darren E. Ray*

Ashley Hyun-Jeong Kim (Cal Bar No. 350856)
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Charles E. Tompkins (*pro hac vice*)
Darren E. Ray (*pro hac vice*)
1155 F Street NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
Email: charles.tompkins@bclplaw.com
        darren.ray@bclplaw.com

*Counsel for Plaintiffs FLEXTRONICS AP, LLC and FLEXTRONICS INTERNATIONAL USA, INC.*

Dated: July 2, 2026.

**FOX ROTHSCHILD LLP**

*/s/ Nicholas A. Sarokhanian*

JACK C. PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
FOX ROTHSCHILD LLP
345 California Street, Suite 2200 San
Francisco, California 94104
Telephone: 415.364.5540

NICHOLAS A. SAROKHANIAN (pro hac vice)
nsarokhanian@foxrothschild.com
KATHERINE M. GENESER (pro hac vice)
kgeneser@foxrothschild.com
FOX ROTHSCHILD LLP
33 South Sixth Street, Suite 3600
Minneapolis, MN 55402
Telephone: 612-607-7000

*Counsel for Defendant CHRISTOPHER RICCI*

JOINT CASE MANAGEMENT STATEMENT

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386